PIERCE, Justice,
dissenting:
¶ 26. Because I find no reversible error in this case, I respectfully dissent from the majority’s decision to reverse Harvell Richardson’s murder conviction.
¶ 27. At the outset, the trial court’s ruling was based on a pretrial motion in limine, which by its nature constitutes a tentative ruling, subject to change by the trial court during the course of trial as the evidence fully develops. See State v. Hicks, 806 So.2d 261, 265 (Miss.2002) (noting that “[p]re-trial evidentiary rulings in limine are inherently subject to change depending upon what actually transpires at trial”). The State sought the motion in limine to exclude testimony or reference to the decedent, Rudolpho Quilon’s 1976 and 1985 felony convictions, which, based on the record, Richardson was not aware of until the two prior convictions were disclosed by the State during discovery.
¶ 28. In granting the motion, the trial court stated:
It’s the Court’s ruling that I am going to deny the testimony at this time with regard to ... the two convictions from a 1976 as well as a 1985 conviction. I find them too remote in time to be relevant for this jury to hear.
I also am making a determination at this time that it is extremely prejudicial and greatly outweighs any probative value with regard to any testimony that has been brought up, I’m not going to reiterate it because the record is replete with regard to the victim alleging that he killed people [sic] was a hit man, I think had done something to that effect, while incarcerated. It’s the court’s opinion that that all stems from the two convictions. And accordingly, I’m going to exclude it. I don’t see the relevance at this juncture, and I think it’s prejudicial. That will be the ruling of the court.
(Emphasis added.) Afterwards, the defense requested that it be allowed to proffer Richardson’s testimony regarding Qui-lon’s criminal past, which the trial court allowed. The majority’s fact recitation of the case comes mainly from this proffered testimony.
¶29. After Richardson’s proffer, the following exchange occurred between the trial court and counsel for the respective parties:
*845 THE COURT: And with the statements being he was a gang member in San Diego, that he had killed a cell mate by pushing him down and, I believe, strangling him, and that he had executed a lady because she was a snitch. The court’s ruling remains. I will also note that the defendant stated that the last statement to that effect allegedly made by the victim was days before the incident for the basis of the indictment that we are here for today. So based on the remoteness of time, as well as the prejudicial effect, the ruling stands.
MR. CROSBY: To what extent will I be allowed to say about his state of mind concerning any bad behavior, not the specifics, but the fact he was a bad guy or he would use—
THE COURT: Yet again, I will defer to our Supreme Court that stated whether a victim is a good guy or bad guy, it’s irrelevant to the crime. Whether a good man dies or a bad man dies is irrelevant to the charge of the offense.
MR. CROSBY: It is irrelevant he told Mr. Richardson he is [a] bad guy as a way of intimidating Mr. Richardson and to allow him to stay longer?
THE COURT: There may be some relevance, but it is greatly outweighed by the prejudicial effect. And will serve only to confuse this jury.
MR. CROSBY: So I can’t say that he intimidated Mr. Richardson by bragging about anything in the past criminally?
THE COURT: Now that’s a gross generalization. What I’m not going to allow you to bring forth to this jury is the fact that this victim alleged to be a gang member in San Diego.... That he had killed a cell mate by throwing him to the ground and strangling him. And that he had executed a young lady because she was a snitch. Anything further, [Sjtate?
[[Image here]]
MR. WARD: Your Honor, we might as well get this out of the way. The defendant stated that immediately prior, allegedly, immediately prior to his killing of the victim in this case, the victim allegedly said if you ever pull a gun on me, I will kill you. It’s clearly hearsay. We would ask that not be admitted.
THE COURT: That ore tenus motion is denied....
¶80. Richardson’s attorney also made the following argument to the trial court:
I’m not trying to talk about [Quilon’s] propensity for violence. The core of our argument here is self-defense based on the state of mind of our defendant.
Now, [the State], to the extent that [the State] says, well, we’ve heard no testimony, so we can’t say that. Well, I mean, that’s the way we are as we proceed in every single case. When the attorneys make an opening statement, they are making that statement based on what they expect the testimony to show. And what I expect the testimony to show is that [Richardson] allowed a man who he knew to have had a bad past, but who he expected and thought through his Christian acts would be able to reform and redeem the man, and that the man resisted that and began to do the opposite of what was expected by [Richardson]. And over the course of five months [sic] had gotten so bad through intimidation of his family members and everything from pornography, to statements to his family that offended Richardson, and [Richardson] took every act from renting a place for ... Quilon to stay, to buying a car, to doing everything he could to get him out of the house, short of forcing him to. And on this night whenever he finally reached a point [sic] where [Quilon] said I want to have sex with your wife, that it became *846 intolerable. And that Mr. Richardson said I’m getting him out of the house, with force if necessary, but he is out now. It’s over. He is going to get out. And that’s what he did to get him out. And his state of mind was based on his past behavior that he had to arm himself because this was a dangerous man based on statements made to Mr. Richardson. I expect the testimony to show everything I just said.
Now, I know [the court has not] heard that yet. You heard some of it. But you haven’t heard it. Of course you haven’t, we haven’t started the trial yet. We haven’t even picked a jury yet. But before I make my statement-and when I voir dire the jury, I need to know that I’m going to be able to defend my client. If I can’t say these things, then what would my defense be? We certainly have been saying this the whole time. It’s self-defense, and we’ve made these — whether we bring a witness to do it or whether we have Mr. Richardson do it, the defendant is not required to reveal his defense ahead of time ever. But we have to be able to say this. If I’m not able to prove what I say, then ... the attorney on the other side can come in and hold me accountable with that with respect to the jury.
But that’s exactly what we expect our client to say, the testimony to be, and without that, if we can’t argue that Mr. Richardson was afraid and armed himself because Mr. Quilon had bragged about his criminal past, then you are basically directing a verdict against us. We won’t be able to defend in trial.
¶ 31. I do not read the trial court’s pretrial ruling as refusing to allow Richardson to defend himself with evidence that tended to show his state of mind at the time of the killing. Indeed, the State acknowledged during the pretrial hearing that Richardson could testify to whatever Richardson wanted to say regarding his state of mind. Clearly, what the State sought to prevent, however, was nonevi-dentiary, prejudicial remarks about Qui-lon’s past being improperly interjected into the case. (Emphasis added.)
¶ 32. The majority finds this “inherently contradictory,” which tells me the majority failed to read and comprehend the rest of my dissent. See Maj. Op. at n. 17. As the aforementioned colloquies illustrate, Richardson’s trial counsel wanted to know how he could introduce evidence of the victim’s character without putting on a defense.
¶ 33. In order to introduce evidence of the victim’s character, for self-defense purposes, Mississippi law requires that there be a question as to who was the initial aggressor. How that question arises depends, of course, on the circumstances attending that particular case. But, how that question does not arise, I am certain, is through comments and statements made by trial counsel during voir dire, opening statements, witness examination, and at closing arguments.
¶ 34. At the pretrial hearing, multiple and conflicting versions of what allegedly transpired between Richardson and Quilon the night of the shooting were presented to the trial court, which may or may not have demonstrated an act of aggression on Quilon’s part. All the trial court was left with was speculation as to which version might evolve at trial. This was what concerned the trial court, and it served as the basis for the court’s ruling. And I find no abuse of discretion therein.
¶ 35. For these reasons, I respectfully dissent.
WALLER, C.J., and CHANDLER, J., join this opinion.